**In re the WINE BOUTIQUE, INC., Debtor.**

**Bankruptcy No. 89–41669–2–11.**

United States Bankruptcy Court, W.D. Missouri.

Aug. 14, 1990.

F. Stannard Lentz, Overland Park, Kan., Steven J. Block, Kansas City, Mo., for debtor.

J. Bradley Pace, Kansas City, Mo., for Peter Gemolas.

Shaun K. Baskett, Mo. Dept. of Revenue, Jefferson City, Mo.

Stephen B. Sutton, Gage & Tucker, Kansas City, Mo., for Twin City State Bank.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

In the present case, several matters are before the Court:

1) a motion to reconsider this Court's sua sponte order of partial distribution of certain assets;

2) several motions for fees;

3) a motion for payment of secured claim by creditor Twin City; and

4) a request for distribution of proceeds.

Several Motions filed have been duplicative. Consequently, the Court, in attempting to weed through these many motions, has focused on the primary question presented by all the parties, namely "who is entitled to the proceeds of the property of the estate sold in May, 1990?"[1]

*Overview.*

Debtor Wine Boutique, Inc. filed a Chapter 11 on July 28, 1989. For the next few months, the debtor proposed several reorganization plans that it hoped would win confirmation. For various reasons, these efforts were not fruitful.

In early April, 1990 the debtor sought permission to employ a real estate broker to help it sell its major assets, namely all real and personal property associated with its liquor business. Regarding compensation, the Debtor's Application to Employ asked that the broker be allowed compensation equal to "six percent of the sale price or such other amount as agreed to be the parties and approved by the Bankruptcy Court." Subject to these terms, the Court approved the debtor's request to employ Peter D. Gemolas, a professional real estate agent, on April 13, 1990.

Mr. Gemolas successfully marketed the liquor store—he quickly reached a tentative agreement with two persons who sought to jointly purchase the property—Messrs. Young Il Yi and Ki Taek Yi. The Court approved the sale on May 3, 1990. Closing took place on May 21, 1990.

The contract for sale provided that the estate be paid $300,000 for the land, building and equipment associated with the liquor store. In addition, the buyer promised to pay approximately $50,900.00 for the debtor's inventory. After certain miscellaneous expenses were paid, the sale netted approximately $338,417.32 for the estate.

On June 15, 1990 the Honorable Karen M. See entered a sua sponte order directing the debtor to distribute $300,000.00 (three hundred thousand dollars) of the proceeds to Twin City State Bank, a creditor with a security interest in all of the proceeds of said sale. Twin City is now asking that the other $38,417.32 be turned over to it in partial satisfaction of its security interest.

In the interim, Mr. Gemolas and the accountant hired by the debtor, Ashok B. Bavishi, have filed requests for payment.[2]

---

**1.** In an effort to streamline the opinion, the Court has focused on what it considers the relevant issues of law instead of addressing each

and every argument and objection raised by the parties in a line-by-line manner.

**2.** On August 15, 1989, Ashok B. Bavishi was approved by this Court for employment as ac-

The debtor maintains that these expenses, as well as its own attorneys fees, should be charged against the proceeds before the proceeds are turned over to Twin City. The matters referred to above can be summarized into a single question: who is entitled to be paid from the proceeds of the aforementioned sale before they are turned over to Twin City? As discussed more fully below, the answer is limited to only two parties: the broker and the State of Missouri.

### Discussion.

■ Debtor's argument is based on § 506(c) of the Bankruptcy Code, 11 U.S.C. That Code section provides the following:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property, to the extent of any benefit to the holder of such claim.

Debtor raises the question of whether certain administrative expenses incurred during the marketing of the aforementioned sale benefited Twin City, which holds a security interest in the property and the sale proceeds.[3] This Court is of the view that only those expenses incurred during the marketing of the property which directly benefited the secured creditor may be recovered from the proceeds.

■ In the Eighth Circuit, any analysis of § 506(c) must comport with the Court of Appeal's application of that Code section in *Brookfield Production Credit Association v. Borron*, 738 F.2d 951 (1984). Citing the District Court, the majority opinion in *Brookfield* described in detail those circumstances when a debtor-in-possession or trustee may properly recover reasonable sale expenses from the property securing an allowed secured claim, or from the proceeds of the sale of that property:

To recover, the debtor-in-possession must expend the fund **primarily to benefit the creditor,** who must in fact directly benefit from the expenditure. Expenses undertaken to improve the position of the debtor-in-possession, although indirectly benefiting the creditor, are not recoverable.

*Brookfield*, supra 738 F.2d 951 (1984). A review of the pleadings and facts of the case sub judice lead to the conclusion that this burden of proof was met as to the broker, and that the broker is entitled to payment from the proceeds.

In the case at bar, the broker was employed for the purpose of helping the debtor liquidate its major asset in order to increase the amount of funds available to pay creditors. Twin City was thus one of the parties intended to benefit from the sale. In fact, Twin City has actually benefitted from the sale. Twin City did not have to foreclose on the property and incur the financial burdens, and time burdens, that are usually associated with such action. Instead, Twin City was freed from these problems by virtue of the broker's prompt disposition of the property. Further, had Twin City lifted the stay and taken possession of the realty and the per-

---

countant for the debtor. The Hourly rates charged by Mr. Bavishi and his staff are summarized as follows:

Hours worked by Mr. Bavishi — 148.25 @ $ 45 per hour = $ 6,671.25;

Hours worked by Staff CPA's — 165.25 @ $ 30 per hour = $ 4,957.50;

Hours worked by Bookkeepers — 161.00 @ $ 20 per hour = $ 3,220.00.

The balance of this work was performed between August 1989 through May 24, 1990.

3. In full, debtor's motion to set aside is based on the following ground:

Debtor feels that any distribution of the net sale proceeds is inappropriate at this point. Debtor believes that approximately $75,000.00 in administrative expenses claims have already accrued during the pendency of this bankruptcy case, including attorney's fees, accountant's fees, real estate sales commission and the reclamation claim of Double Eagle Distributors, Inc. Debtor believes that many of these administrative expense claims may be properly recoverable from the net proceeds of the sale pursuant to § 506(c) as "reasonable and necessary costs and expenses of preserving, or disposing of" property secured by Bank's secured claim.

**Debtor's Motion To Set Aside Order of Partial Distribution To Twin City State Bank Pursuant to F.R.C.P. 60(b),** *In re The Wine Boutique,*

sonalty, it would have had to sell same and pay its broker a commission also. Therefore, insofar as the broker's services directly benefit the secured creditor, Mr. Gemolas is entitled to be paid $21,054.00 which is Six Percent (6%) of the proceeds of the sale.

■ Unlike the broker, neither the accountant nor debtor's counsel provided any direct benefit to Twin City. The accountant was hired by the debtor-in-possession to help straighten out and monitor the Wine Boutique's finances. Debtor's counsel was hired to guide the debtor through the often rough waters of bankruptcy. The benefit of these services flowed directly to the debtor, not Twin City. Consequently, Twin City is not obligated to ease the debtor's burden by helping it pay its fees. Though the accountant and debtor's counsel are indeed entitled to payment, they are not entitled to payment from the proceeds held in escrow.

The State of Missouri appeared in open court and requested by oral motion that the tax liabilities owed on the property be paid from the sale proceeds. The State of Missouri holds tax liens against the property totalling $11,611.99. In addition, tax liabilities in the amount of $6,950.81 are owing and due for April and May of 1990.

■ Generally, Mo.Rev.Stat. § 144.150.2 requires the successor of a business to withhold a sufficient portion of the purchase price to provide for outstanding taxes. Cf. *Bates v. Director of Revenue*, 691 S.W.2d 273 (Mo.Sup.1985). This sum is to be held until the former owners, in this case the owners of the Wine Boutique, Inc., produce a receipt from the Director of Revenue showing that all tax duties have been satisfied. If the buyer fails to withhold this sum, as it has failed to do here, it can be held personally liable for payment of the taxes, interest and penalties left unpaid.

■ Neither the Wine Boutique and its representatives nor the buyers or their representative complied with this law. Therefore, insofar as the State should have been paid from the proceeds before they were turned over to the estate, it is only appropriate that this Court use its equitable powers to remedy this omission. 11 U.S.C. § 105.[4] The debtor owes $18,562.80 in back taxes which it is to be paid from the proceeds to the State of Missouri. Once again had the Bank sold this operation as a going business, these sums would have to be paid from any amounts realized and so Twin City in reality is only paying what it would have to pay if it sold.

■ Debtor has filed a "Motion for Reconsideration," alleging that the Court's sua sponte order was "premature." As explained by the Eighth Circuit Court of Appeals, "aggrieved parties in bench trials should not file motions labeled 'motion for reconsideration'." *Sanders v. Clemco Industries*, 862 F.2d 161, 170 (1988). Neither the Federal Bankruptcy Rules nor the Federal Rules of Civil Procedure support such a motion. Requests like this should be based on, and contain reference to, a specific rule which permits the motion. Absent an appropriate description, it is within the discretion of the Court to deny or strike the motion.[5]

■ In the present case, a review of all the pleadings leads to the conclusion that

---

*Inc.*, No. 89–41669–2–11 (Bankr.W.D.Mo. June 25, 1990) at 1.

4. Without engaging in a lengthy discussion of the extent and limitations of its § 105 powers, the Court wishes to acknowledge that since it would have been within the scope of its powers to condition the sale on payment of the taxes, it seems similarly within its powers to order the same in order to cure the mistake. The Court takes no position on whether the State of Missouri, the debtor, or the buyers should have called this matter to the Court's attention while the motion to sell was pending.

5. In some cases, poor pleading such as this would leave the Court with no choice but to strike. The more vague a generic motion is, the more problems it presents. The independent role of the bench demands that the Court not enter a fray by interpreting a grossly generic motion in favor of one side or another.

In the present case, the Motion did make reference to Fed.R.Civ.P. 60(b). However, counsel should generally plead their case with a greater degree of specificity, referring to the specific subsection which affords them relief, in order to avoid dismissal.

**510**

the debtor was attempting to file a motion under Bankruptcy Rule 9024(b)(6). See also Fed.R.Civ.P. 60(b)(6).[6] In short, the debtor alleges that the sua sponte order was premature because it allowed specific funds to be transferred to Twin City which should have gone to satisfy other obligations. Approximately $38,417.32 was left in the estate after entry of the sua sponte order. As explained above, the broker and the State of Missouri are entitled to a total of $39,616.80 from the proceeds. According to the report $341,548.57 was the balance of proceeds held in escrow as of June 27, 1990. In the interim, interest on the account should leave even more funds to satisfy the $39,616.80 owed to the broker and the State as well as to satisfy the sua sponte order to pay Twin City $300,000.00. Accordingly, the sua sponte order was not premature and need not be vacated under Bankruptcy Rule 9024.

Finally, Twin City has requested that it be paid the proceeds left in escrow after the sua sponte order. Based on the foregoing, however, $39,616.80 of these proceeds rightfully belong to the broker and the State. Thus, Twin City is only entitled to the remainder of the proceeds left after these parties are paid. Twin City's motion is therefore granted in part.

*Conclusion.*

Mr. Gemolas's motion for payment of fees pursuant to 11 U.S.C. § 506(c) is Granted to compensate him for services which he rendered that benefited the secured creditor. While the accountant and the debtor's attorneys have rendered valuable services to the debtor for which they should usually be paid, they are not entitled to payment of their fees as § 506 expenses insofar as their work was performed primarily for the benefit of the debtor. The Court reserves judgment as to whether the fees allegedly owed to the accountant or debtor's counsel can be satisfied from another source. The State of Missouri's request for payment of back

taxes is Granted and is to be paid, as required by State law, from the purchase price. Twin City's motion for distribution of the rest of the proceeds is Granted as to the funds left in escrow after payment to the broker and the State but only after a determination of costs due to the Bankruptcy Court. Finally, because the aforementioned matters does not require the Court to "dip into" the $300,000 previously paid to Twin City, the debtor's motion for reconsideration is Denied.

SO ORDERED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.

---

**6.** This Bankruptcy Rule incorporates Fed.R. Civ.P. into the Bankruptcy Rules. Basically, that Rule allows the Court to "relieve a party from a final judgment" for a number of reasons, including "any other reason justifying relief from operation of the judgment." The debtor's argument that the sua sponte order was premature justifies relief in the present case.