In re PRONTO ENTERPRISES, INC., Pronto Convenience Stores, Inc., and Central Petroleum Distributors, Inc., Debtors.

Norman E. ROUSE, Trustee/Plaintiff,

v.

UNITED STATES of America, the State of Missouri Department of Revenue, and Ozark Grocer Company, Defendants.

Bankruptcy No. 87–03578–SW–7.
Adv. No. 91–03030–SW.

United States Bankruptcy Court, W.D. Missouri.

June 3, 1992.

Norman E. Rouse, pro se.

Robert Milestone, Washington, D.C., for USA/IRS.

Brian Darling, Jefferson City, Mo., for Missouri Dept. of Revenue.

Raymond I. Plaster, Springfield, Mo., for Ozark Grocers.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The matter before the Court is a dispute between three creditors over the proceeds generated by the sale of three properties and now held by the Chapter 7 trustee. The issues to be addressed are (1) whether the amount withheld from the purchase price by a purchaser of a debtor's business pursuant to the Missouri successor tax liability statutes constitutes property of the debtor to which a federal tax lien may attach, and (2) what effect does substantive consolidation have on the nature and extent of liens held by creditors of separate pre-consolidation debtors.

This is a core proceeding under 28 U.S.C. § 157(b)(2) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b). The parties have submitted this case based upon stipulated facts, documents, and pleadings filed with the Court. For the reasons set forth below, I conclude that the amount withheld from the purchase price by a purchaser of a debtor's business pursuant to Mo.Rev.Stat. §§ 143.241(5) and 144.150(3) (Supp.1991) does not constitute property of the debtor to which the IRS' federal tax lien can attach. I also conclude that, given the circumstances of this case, substantive consolidation did not operate to extend Ozark Grocer Company's lien in certain assets of Pronto Enterprises, Inc. to similar assets of Pronto Convenience Stores, Inc., which were already subject to federal tax liens.

### FACTUAL BACKGROUND

On August 17, 1987, Pronto Enterprises, Inc., Pronto Convenience Stores, Inc., and Central Petroleum Distributors, Inc. ("the Debtors") each filed for relief under Chapter 11 of the Bankruptcy Code. Pronto Enterprises, Inc. was listed as the parent corporation and sole shareholder of the other two Debtor corporations. The bankruptcy schedules of Pronto Enterprises, Inc. and Pronto Convenience Stores, Inc. revealed that those two Debtors operated fuel truck stops and engaged in the business of selling diesel fuel, fuel for automo-

biles, groceries and other convenience store items. According to the parties to the present dispute, Pronto Enterprises, Inc. owned and operated several "in-town convenience stores," while Pronto Convenience Stores, Inc. owned and operated certain "truck stops" along Interstate 44. The bankruptcy schedule of Central Petroleum Distributors, Inc. indicated that it was a wholesale distributor of petroleum products.

On June 22, 1989, the Court (the late Dennis J. Stewart, C.J.) granted the Debtors' motion to substantively consolidate the bankruptcy proceedings of the three Debtors, and confirmed the Debtors' consolidated plan of reorganization. The Reorganized Debtors continued operating under such plan.

In March, 1991, the Reorganized Debtors sold under the name of Pronto Convenience Stores, Inc. a store in Franklin County, Missouri. This store was one of the "truck stops" owned and operated by Pronto Convenience Stores, Inc. prior to the consolidation. In consideration for such sale, the purchaser, Bauman Oil, Inc., issued two checks totalling $80,000.00, one made payable to both Pronto Convenience Stores, Inc. and the Internal Revenue Service dated March 28, 1991 in the amount of $58,751.09, and one made payable to both Pronto Convenience Stores, Inc. and the Missouri Department of Revenue dated March 28, 1991 in the amount of $21,248.91.[1] These checks were delivered to the consolidated Debtor, but never cashed. At some point thereafter a dispute arose between the Internal Revenue Service and the Missouri Department of Revenue relating to who was entitled to the proceeds.

On May 3, 1991, the case was converted to a proceeding under Chapter 7 of the Bankruptcy Code. The Chapter 7 Trustee took possession of the two checks, and, on July 19, 1991, the Court ordered the Missouri Department of Revenue and the United States to endorse the checks to the trustee. The proceeds of each check are being held by the trustee until further order of this Court.

In June, 1991, the trustee sold two additional stores under the name of Pronto Convenience Stores, Inc. Those stores were located in Jasper County, Missouri. They too were "truck stops" owned and operated by Pronto Convenience Stores, Inc. prior to the consolidation. On September 12, 1991, the trustee initiated this adversary proceeding to determine the nature and extent of the liens in the proceeds of the sales claimed by the United States of America ("the IRS") and the Missouri Department of Revenue.

On March 20, 1992, Ozark Grocer Company ("Ozark") filed a Motion for Intervention in this adversary action and a cross-claim against the IRS and the Missouri Department of Revenue, claiming that it holds a properly perfected and prior lien in the proceeds of the sales ahead of the IRS and the Missouri Department of Revenue. The evidence indicates that, on July 7, 1981, Ozark filed a UCC 1 Financing Statement with the Missouri Secretary of State against Pronto Enterprises, Inc., and Ozark subsequently filed a timely UCC 3 continuation statement on June 30, 1986. Additionally, on July 6, 1981, Ozark filed a UCC 1 Financing Statement in Jasper County, Missouri, against Pronto Enterprises, Inc., with respect to which Ozark filed a UCC 3 continuation statement on June 27, 1986.[2]

---

1. The purchaser apparently made the checks jointly payable in order to avoid any potential successor liability in connection with unpaid tax obligations under state and federal law.

2. The following description of collateral may be found in Ozark's financing statements:

a. All goods and merchandise now owned or hereafter acquired by the undersigned and held for sale or to be consumed in the undersigned's business, including, without limitation, all groceries, meats, produce, dairy products and sundries (all hereinafter referred to as the "Inventory"); and

b. All accounts, contract rights, instruments, chattel paper and general intangibles at any time arising or obtained by the undersigned as a result of the sale or other disposition of any of the inventory; and

c. All furniture, fixtures, machinery and equipment used or usable in undersigned's business, together with any additions thereto, renewals or replacements thereof; and

d. The proceeds and products of each of the foregoing.

Both the IRS and the Missouri Department of Revenue deny that Ozark has a perfected lien in the proceeds of the above-described sales or that Ozark holds a priority status over the interests of the IRS and the Missouri Department of Revenue.

### LEGAL ANALYSIS

There are essentially two issues to be considered in this case. The first concerns the dispute between the IRS and the Missouri Department of Revenue. The resolution of that dispute depends on whether the portion of the proceeds of the March, 1991 sale represented by the check made payable to Pronto Convenience Stores, Inc. and the Missouri Department of Revenue constituted property of Pronto Convenience Stores, Inc. to which the federal tax lien could properly attach. If so, then it would appear that the IRS holds a position superior to that of the Missouri Department of Revenue under the "first in time, first in right" principal. *See United States v. City of New Britain, Connecticut,* 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *Crow v. Long,* 107 B.R. 184, 187 (E.D.Mo. 1989). If not, then Debtors had no interest in the funds to which the IRS' tax lien could attach. The second issue that must be determined is whether Ozark's lien was validly perfected and superior to the interests of the IRS and the Missouri Department of Revenue in the sales proceeds. Each of these issues will be discussed in turn.

### I. DISPUTE BETWEEN THE IRS AND MISSOURI DEPARTMENT OF REVENUE

The IRS contends that because it assessed its taxes and filed its notices of tax liens prior to the time the State of Missouri's claims for taxes arose, its liens have priority over the State of Missouri's claim to the funds represented by the $21,248.91 check.[3] The Missouri Department of Revenue counters with the argument that, under Mo.Rev.Stat. §§ 143.241(5) and 144.-

150(3) (Supp.1991), the check made payable to both it and Pronto Convenience Stores, Inc. was not subject to the IRS' lien and did not become property of the estate.

Section 6321 of the Internal Revenue Code of 1986, 26 U.S.C. § 6321, provides that:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

As a result, failure to pay taxes due and owing to the federal government creates a lien in favor of the United States on all property and rights to property belonging to the delinquent taxpayer. Pursuant to 26 U.S.C. § 6322, the tax lien attaches at the time of the tax assessment, and continues until the liability for the amount assessed is satisfied. The lien covers not only property of the taxpayer at the time of assessment but also any after-acquired property or rights to property obtained by the taxpayer throughout the duration of the lien. *See B & H Opticks, Inc. v. Internal Revenue Serv.,* 633 F.Supp. 1356, 1357–58 (E.D.Mo.1986). Once the federal tax lien is perfected, it has priority over all interests subsequently created in the subject property, other than those certain enumerated interests excepted by 26 U.S.C. § 6323.

The threshold question, then, is whether and to what extent the Debtor has "property" or "rights to property" to which the federal tax lien could attach. To answer that question, the Court must look to state law because state law controls in determining the nature of the legal interest held by the taxpayer in property sought to be reached by a tax lien. *See Tony Thorn-*

---

**3.** The IRS filed its notices of federal tax liens against Pronto Convenience Stores, Inc. just prior to the filing of Debtors' bankruptcy petition in August, 1987. The Missouri Department of Revenue's claim arises from unpaid post-confirmation withholding and sales taxes for the periods December, 1990, and January, February, and March, 1991.

ton *Auction Serv. v. United States,* 791 F.2d 635, 637 (8th Cir.1986) (citing *Aquilino v. United States,* 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–81, 4 L.Ed.2d 1365 (1960)); *Medaris v. United States,* 884 F.2d 832, 833 (5th Cir.1989) (citing *United States v. National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985)). Once state law is applied and if it is determined that the taxpayer has a legal interest in the property to which the federal tax lien could attach, the priority of the competing interests is dictated by federal law. *National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925.

■ Missouri law requires that a purchaser of a business withhold an amount of the purchase price sufficient to cover any delinquent employee withholding taxes and sales and use taxes owed to the State of Missouri. *See* Mo.Rev.Stat. §§ 143.241(5) and 144.150(3) (Supp.1991). According to the Missouri Department of Revenue, Bauman Oil, Inc. apparently complied with these statutes by making the $21,248.91 check jointly payable to the Department of Revenue and Pronto Convenience Stores, Inc. As a practical matter, the result is the same as if Bauman Oil, Inc. had simply withheld from the purchase price the sums due the Missouri Department of Revenue. The question, then, is whether the proceeds of the sale represented by this check are subject to an interest of the Debtor to which the federal tax lien could attach.[4]

The effect of the Missouri successor tax liability statutes was discussed in *In re Wine Boutique, Inc.,* 117 B.R. 506 (Bankr. W.D.Mo.1990) (Koger, C.J.). In that case, the debtor sold its liquor store and property associated therewith. The State of Missouri held tax liens against the property totalling $11,611.99, and additional tax lia-

bilities in the amount of $6,950.81 were due and owing. Neither the debtor nor the buyers complied with Mo.Rev.Stat. § 144.-150. The creditor which held a security interest in the proceeds of the sale requested that all the proceeds be turned over to it. The State of Missouri asked that the tax liabilities first be paid from the proceeds. In determining that the delinquent taxes should be paid before the secured creditor's claim was satisfied, the court explained:

> Therefore, insofar as the State should have been paid from the proceeds before they were turned over to the estate, it is only appropriate that this court use its equitable powers to remedy this omission. 11 U.S.C. § 105. The debtor owes $18,562.80 in back taxes which it is to be paid from the proceeds to the State of Missouri.

*Wine Boutique,* 117 B.R. at 509 (footnote omitted).

In the present case, the purchaser attempted to comply with the applicable successor tax liability statutes by issuing the check to the Debtor and the Missouri Department of Revenue. As in *Wine Boutique,* that amount should have been paid to the state before being turned over to the bankruptcy estate. Accordingly, I conclude that the $21,248.91 check does not constitute property of any of these Debtors in this consolidated bankruptcy case. Therefore, the federal tax lien did not attach to that check, and the Missouri Department of Revenue is entitled to receive the $21,248.91.[5]

## II. CLAIM OF OZARK

Ozark's claim that it holds a prior perfected security interest in the proceeds of the sale of the properties is premised on its

---

**4.** Arguably, Pronto Convenience Stores, Inc. has a recognizable interest in these proceeds. Under the Missouri successor tax liability statutes the purchaser is to withhold from the purchase price an amount sufficient to cover certain delinquent taxes *until* such time as the former owner shall produce a receipt from the director of revenue showing that the taxes have been paid, or a certificate stating that no taxes are due. If there existed the possibility that the

taxes due and owing the state would be paid by the Debtor in this case, then arguably the Debtor would have "rights to property" subject to the federal tax lien. However, it does not appear that the unpaid taxes will be satisfied by the Debtor in this case.

**5.** As in *Wine Boutique,* Ozark's lien would not extend to the $21,248.91 check either.

contention that as a result of Debtors' substantive consolidation Ozark's lien extended to all property owned by the consolidated Debtors so long as it fits within the description in Ozark's financing statements. Thus, the Court is asked to determine the effect of substantive consolidation where, as in this case, two creditors held properly perfected liens in the assets of separate debtors that are subsequently consolidated in a bankruptcy proceeding.

■ Although the Bankruptcy Code does not specifically provide for substantive consolidation, bankruptcy courts have the power to order substantive consolidation by virtue of their general equitable powers. *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 248 (11th Cir.1991). A central purpose of substantive consolidation is "to ensure the equitable treatment of all creditors." *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir.1988). Substantive consolidation essentially involves the pooling of the assets and liabilities of two or more related entities, the satisfaction of liabilities from the consolidated pool of assets, and the elimination of inter-corporate liabilities running between the consolidated debtors. *See Eastgroup Properties*, 935 F.2d at 248.

■ In the present case, Ozark contends that this pooling of assets and liabilities necessarily resulted in an extension of its perfected security interest in certain assets, and proceeds from any sale thereof, of Pronto Enterprises, Inc., to all similar assets of the consolidated Debtors which fit within the description of collateral in its financing statements. The IRS contends that Ozark's lien was not extended beyond the property owned by Pronto Enterprises, Inc. because substantive consolidation does not operate to enlarge or diminish the rights of creditors of the entities being consolidated.

Ozark's financing statements clearly granted it a secured claim against certain assets, as well as proceeds from the sale of those assets, of Pronto Enterprises, Inc. As pointed out by the IRS, those financing statements do not contain any cross-collateralization clauses, nor do they purport to extend to the assets of Pronto Convenience Stores, Inc. On the other hand, the notices of federal tax liens filed by the IRS covered the assets of Pronto Convenience Stores, Inc.

Based on the evidence before the Court, and where, as in this case, creditors such as Ozark and the IRS hold properly perfected liens in the assets of separate debtors that are subsequently consolidated in a bankruptcy proceeding, and no irremediable commingling of assets has occurred,[6] I find that the IRS cannot be forced to sacrifice the priority of its claims against its debtor, Pronto Convenience Stores, Inc., for the benefit of Ozark. *See Augie/Restivo*, 860 F.2d at 520. Accordingly, the IRS holds a prior position over Ozark with respect to the proceeds now held by the Chapter 7 trustee as a result of the March and June 1991 sales.

## CONCLUSION

Based on the foregoing, I conclude that the amount withheld from the purchase price by a purchaser of a debtor's business pursuant to Mo.Rev.Stat. §§ 143.241(5) and 144.150(3) (Supp.1991) does not constitute property of the debtor to which the IRS' federal tax lien can attach. Therefore, the federal tax lien did not attach to the $21,248.91 check dated March 28, 1991 and made payable to Pronto Convenience Stores, Inc. and the Missouri Department of Revenue, and, thus, the Missouri Department of Revenue is entitled to that amount. I also conclude that, given the circumstances of this case, substantive consolidation did not operate to extend Ozark's lien in certain assets of Pronto Enterprises, Inc. to similar assets of Pronto Convenience Stores, Inc., which were already subject to the federal tax liens. Thus, the IRS holds priority over Ozark in the proceeds from the sales of Debtors' property.

---

**6.** It is clear, and the parties so agree, that the proceeds now being held by the trustee resulted from the sale of three stores which were owned and operated by Pronto Convenience Stores, Inc. prior to the consolidation.

An Order consistent with this Memorandum Opinion will be entered this date.