PRONTO ENTERPRISES, INC., and
Norman Rouse, Appellees/Plaintiffs,

v.

UNITED STATES of America, et
al., Appellants/Defendants.

No. 92–5053–CV–SW–8.

United States District Court,
W.D. Missouri,
Southwestern Division.

Aug. 29, 1995.

Richard J. Collins, Collins, Webster & Rouse, P.C., Joplin, MO, for Pronto Enterprises, Inc. and Norman Rouse.

Robert D. Millstone, U.S. Dept. of Justice, Tax Division, Washington, DC, for U.S.

Brian E. Darling, Missouri Dept. of Revenue, Jefferson City, MO, for State of Missouri and Dept. of Revenue of the State of Missouri.

Raymond I. Plaster, Champion & Plaster, P.C., Springfield, MO, for Ozark.

## ORDER

STEVENS, District Judge.

This bankruptcy appeal is before the Court to determine whether the Internal Revenue Service or the Missouri Department of Revenue has a superior right to proceeds resulting from the March, 1991 sale of a convenience store formerly owned and operated by Pronto Convenience Stores, Inc. ("Pronto"), and sold pursuant to Pronto's bankruptcy. Norman Rouse, trustee of Pronto Enterprises, has no further interest in this appeal. Jurisdiction is proper pursuant to 28 U.S.C. § 158(a). The bankruptcy court (Arthur B. Federman, J.) determined that the United States is not entitled to the portion of proceeds earmarked to satisfy delinquent state taxes because under Missouri successor liability statutes, that portion of proceeds never becomes property of the bankruptcy estate. The bankruptcy court found that the United States is entitled to $58,751.09, plus interest, from the sale, and that the Missouri Department of Revenue is entitled to $21,248.91, plus interest, from the sale. The bankruptcy court also determined that the United States is entitled to the entire $30,000 proceeds from the sale of two other convenience stores in June, 1991. The United States appeals and seeks the full amount of the proceeds from the March sale. For the reasons below, the bankruptcy court's order is remanded for further proceedings consistent with this order.

### Standard of Review

In considering this appeal, the Court must review the bankruptcy court's conclusions of law de novo. *In re Apex Oil Co.,* 884 F.2d 343, 348 (8th Cir.1989). The bankruptcy court's findings of fact will not be disturbed unless they are clearly erroneous. Bankruptcy Rule 8013; *Apex Oil,* 884 F.2d at 348.

### Background

On September 12, 1991, Norman Rouse, trustee, instituted this adversary action against the United States and the State of Missouri, *ex rel.* Missouri Department of Revenue. Among other matters, the trustee requested that the bankruptcy court determine whether the United States or Missouri's Department of Revenue is entitled to the proceeds from the sale of certain stores

owned by the debtor Pronto Convenience Stores, Inc.

In March, 1991, Pronto sold a store which it owned and operated in Franklin County, Missouri. In consideration for the sale, the buyer gave Pronto two checks totaling $80,000. One check was issued to Pronto and the Internal Revenue Service for $58,751.09; the other was issued to Pronto and the Department of Revenue for $21,248.91. Pronto never cashed the checks. Upon order of the bankruptcy court, on or about July 19, 1991, the checks were endorsed to the trustee by the United States and the Department of Revenue. The checks are currently being held in the registry of the bankruptcy court pending the outcome of the present litigation.

In June, 1991, two additional stores owned and operated by Pronto were sold by the trustee. The trustee received $30,000, which was deposited into the registry of the bankruptcy court.

This dispute revolves around sale proceeds represented by the check for $21,248.91, made payable to the Pronto and the Department of Revenue. This sum equals the amount of unpaid taxes Pronto owed to the state.

The United States claims that it is entitled to priority over the Department of Revenue because it assessed taxes against Pronto before the debt Pronto owed to the Department of Revenue even accrued.

The Department of Revenue argues that it is entitled to priority over the United States because Missouri successor liability statutes, Mo.Rev.Stat. §§ 143.241(5) and 144.150(3), operated to divest Pronto of its property interest in the proceeds from the sale of the store, so that at the time of bankruptcy, Pronto had no property interest to which the federal lien could attach. Alternatively, the Department of Revenue contends that because Pronto owed the state of Missouri employment taxes, the state is entitled to a trust equal to the amount of the employment taxes owed.

On June 3, 1992, the bankruptcy court entered a memorandum order and judgment in favor of the Department of Revenue, holding that the amount withheld from the purchase price by a purchaser of a debtor's business pursuant to Mo.Rev.Stat. §§ 143.241(5) and 144.150(3) does not constitute property of the debtor to which the Internal Revenue Service's federal tax lien can attach.

This appeal followed.

*Discussion*

▮ This case involves a dispute over $21,248.91, plus interest, to which both the United States and the Department of Revenue claim entitlement. If that amount were property of the debtor at the time the stores were sold, then the United States is entitled to the amount under the Bankruptcy Code's well-established priority rules. If that amount were not property of the debtor, then Missouri Department of Revenue has priority. Thus, the central question presented by this case is whether the debtor had property rights in that portion of the sale proceeds.

Under the Internal Revenue Code, a federal tax lien is created in the amount of any unpaid tax on "all property and rights to property, whether real or personal," belonging to the delinquent taxpayer. 26 U.S.C. § 6321. The lien arises automatically when outstanding taxes are assessed. 26 U.S.C. § 6322.

▮ However, federal tax liens attach only to property and property rights. To determine whether such property rights exist, one must first look at state law. State law determines the nature of the legal interest held by a taxpayer in property, which subsequently determines whether the interest may be subjected to a tax lien. *See Tony Thornton Auction Serv. v. United States,* 791 F.2d 635, 637 (8th Cir.1986) (*citing Aquilino v. United States,* 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960)). The Internal Revenue Code itself "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958).

▮ Although state law creates legal interests, "the ultimate question of whether an interest thus created and defined falls within

a category stated by a federal statute is a federal question." *In re Halprin,* 280 F.2d 407, 409 (3d Cir.1960); *see also Rodriguez v. Escambron Dev. Corp.,* 740 F.2d 92, 97 (1st Cir.1984) (federal law governs whether state-created "rights are 'rights to property' to which a tax lien may attach"). Once it is determined that a taxpayer has a property interest to which a federal tax lien could attach, the priority of the competing interests is determined by federal law. *United States v. National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985).

■ In this case, the Department of Revenue contends that the portion of the sale proceeds it claimed was never property of the debtor, because of Missouri's successor liability statutes. Under Missouri law, a purchaser of a business must withhold an amount from the purchase price sufficient to cover any delinquent state employee withholding taxes and sales and use taxes. Mo. Rev.Stat. §§ 143.241(5) and 144.150(3). The Missouri successor liability statutes apply to every sale of a business unless the purchaser acquires the business as the result of an enforcement action by a lien creditor. Mo. Rev.Stat. §§ 143.241(7) and 144.150(5). Basically, these statutes enable the state to collect delinquent taxes when business property is transferred.

In the case before us, the buyer complied with the Missouri successor liability statutes by making the $21,248.91 check jointly payable to Pronto and the Department of Revenue. The bankruptcy court held that the $21,248.91 was properly paid to the state before transfer and never became property of the bankruptcy estate. Therefore, the State argues, the federal tax lien did not attach to that amount.

■ It is undisputed that Pronto had a property interest in the stores prior to the sale. It is undisputed that federal tax liens attached to all of Pronto's property and rights to property *before* the petition for bankruptcy was filed, and *before* the Department of Revenue's claim arose. Whatever was property of a debtor before bankruptcy becomes property of the bankruptcy estate once bankruptcy action is commenced. *Begi-*

*er v. Internal Revenue Serv.,* 496 U.S. 53, 57, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990); *In re Wendy's Food Systems, Inc.,* 133 B.R. 917, 920 (Bankr.S.D. Ohio 1991). Nonetheless, the Department of Revenue argues that because the stores were sold when the sales and employment taxes were delinquent, Pronto had no property interest in certain proceeds from the sale of the stores, and thus the federal tax lien did not attach to the proceeds.

The difficulty this Court has with the Department of Revenue's position is illustrated by the following example. If the stores at issue had not been sold, the federal tax lien would be superior to the Department of Revenue's post-petition tax assessment. Thus, Missouri's successor liability laws, as applied in this situation, carve out a portion of what otherwise would be part of the bankruptcy estate, at the instant the property is transferred.

■ Despite Missouri's compelling interest in collecting unpaid taxes, and the "legitimate and traditional interest [it] has in creating and defining the property interest of its citizens," *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1279, 4 L.Ed.2d 1365 (1960), it is not generally within the province of state law to infringe on the federal government's equally compelling interest in collecting delinquent federal taxes. State law determines property rights, but federal law is used to prioritize claims of competing creditors. A state "cannot thwart the operation of the Tax Code by classifying the interests it has created as something other than property rights." *In re Terwilliger's Catering Plus, Inc.,* 911 F.2d 1168, 1172 (6th Cir. 1990), *cert. denied, Ohio, Dep't of Taxation v. Internal Revenue Serv.,* 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991).

Moreover, section 6334(a) of the Internal Revenue Code outlines certain exemptions from levy, for "necessity of life" items such as clothing, school and professional books, and minimal income. 26 U.S.C. § 6334(a). Section 6334(c) provides that "no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." 26 U.S.C.

§ 6334(c). In the case before us, the Missouri successor liability statutes, as applied, appear to create exemptions not outlined in § 6334(a) and frustrate the federal tax scheme.

■ In the instant case, notwithstanding Missouri law, Pronto appears to have had a sufficient interest in the proceeds from the sale of the store for a federal tax lien to attach to the proceeds. Before the stores were sold, it is undisputed that the stores themselves were subject to federal tax liens. Thus, when Pronto sold the stores, the proceeds from the sale of the stores remained encumbered by the pre-existing federal tax liens. Under 26 U.S.C. § 6322, liens continue from the time of assessment until liability is satisfied. *See also B & H Opticks, Inc. v. Internal Revenue Serv.*, 633 F.Supp. 1356, 1358 (E.D.Mo.1986). Furthermore, since the Internal Revenue Service assessed the taxes against Pronto before the taxes owed to Missouri even accrued, it seems that the federal tax liens would be entitled to priority. *Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1176 (6th Cir.1990) *cert. denied Ohio, Dep't of Taxation v. Internal Revenue Serv.*, 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991).

■ The language of 26 U.S.C. § 6321 is "broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce*, 472 U.S. 713, 720–21, 105 S.Ct. 2919, 2924–25, 86 L.Ed.2d 565 (1985). In accordance with the broad grant of power to the Internal Revenue Service, the Supreme Court has upheld the federal power to collect taxes notwithstanding conflicting provisions of state law. In *United States v. Mitchell*, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971), the Court held that a wife's renunciation under Louisiana law of her community property rights did not protect her from federal tax liability on community earnings, even though under state law the renunciation exonerated her of debts contracted during the marriage. *Mitchell*, 403 U.S. at 191, 91 S.Ct. at 1765. The Court stated that "an exempt status under state law does not bind the federal collector. Federal law governs what is exempt from federal levy." *Id.* at 204, 91 S.Ct. at 1771.

In *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), the Court was called upon to decide whether Texas homestead exemption law immunized a taxpayer's home from foreclosure and sale to satisfy a federal tax lien. The foreclosure and sale violated, it was argued, the homestead rights of taxpayer's spouse, who held an interest in the home and whose property was not subject to the tax lien. The Court, relying on the foreclosure statute, 26 U.S.C. § 7403, held that the district court could order the sale of the home. *Id.* The Supreme Court recognizes situations in which federal law can preempt inconsistent state law provisions.

In reaching its conclusion, the bankruptcy court examined *In re the Wine Boutique*, 117 B.R. 506 (W.D.Mo.1990), a case involving the sale of a business. At the time of the sale, the sellers owed Missouri over $18,000 in taxes. 117 B.R. at 509. A creditor of the debtor argued that it was entitled to the entire proceeds, while the state contended that its tax liens had to be satisfied first. *Id.* at 507–08. In *Wine Boutique*, unlike the case before us, neither the buyers nor the sellers complied with Missouri's successor liability statute, and the amount sellers owed in back taxes was paid into the bankruptcy estate. The court exercised its equitable powers and required that the debt be paid to the state of Missouri, acknowledging that this amount should have been paid from sale proceeds before they were turned over to the estate. 117 B.R. at 509.

*Wine Boutique* involved general creditors, not the United States of America. In the case before us, unlike in *Wine Boutique*, the application of the Missouri successor liability statute seems to operate in such a way to thwart the federal tax scheme, and defy the authority afforded federal law by the supremacy clause of the United States Constitution. *See, e.g., In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168 (6th Cir.1990), *cert. denied, Ohio, Dep't of Taxation v. Internal Revenue Serv.*, 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991); *In re Kick–Off*, 82 B.R. 648 (Bankr.D.Mass.1987).

The pleadings on appeal address the issue of whether the proceeds are property more comprehensively than did the pleadings presented to the bankruptcy court. This Court feels that it would be beneficial for the bankruptcy court to review the additional pleadings on the issue of property, and address the issue in subsequent findings.

Accordingly, the decision of the bankruptcy court is REMANDED for further proceedings consistent with this order.

IT IS SO ORDERED.