In re Ragip Sinan MUNGAN, a/k/a R.S. Mungan, a/k/a Sinan Mungan, a/k/a R. Sinan Mungan, Debtor.

Mary Cathryn Jedlicka, a/k/a Mary C. Jedlicka, a/k/a Cathy Jedlicka, Debtor.

Kenneth Hunley and wife, Peggy Hunley, Plaintiffs,

v.

Ragip Sinan MUNGAN, a/k/a R.S. Mungan, a/k/a Sinan Mungan, a/k/a R. Sinan Mungan, Mortgage Masters, Inc., Mortgage Masters Financial Services Corporation, G. Wayne Walls, Trustee, First Tennessee Bank National Association, Mary Cathryn Jedlicka, a/k/a Mary C. Jedlicka, a/k/a Cathy Jedlicka, William T. Hendon, Trustee, Robert Long and wife, Melissa Long, Fidelity National Insurance Company of New York, State of Tennessee, by and through both Department of Labor and Workforce Development and through the Department of Revenue, the United States of America, by and through the Internal Revenue Service, IMC Mortgage Company, Joe M. Kirsch, Trustee, Tennessee Water Service, Inc., New Century Mortgage Corporation, Firstar Bank Milwaukee

N.A., as trustee under Salomon Brother Mortgage Securities VII Mortgage Pass–Through Certificates Series 1999–NCS, Michael Hunley and wife, Robin Hunley, Steven J. Lusk, Trustee Defendants.

Bankruptcy Nos. 01–31472, 01–31712. Adversary No. 01–3169.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 18, 2002.

J. Myers Morton, Morton & Morton, PLLC, Knoxville, TN, for Plaintiffs.

Jason S. Zarin, United States Department of Justice, Tax Division, Washington, D.C., Harry S. Mattice, Jr., United States Attorney, Pamela G. Steele, Assistant United States Attorney, Knoxville, TN, for the Internal Revenue Service.

F. Chris Cawood, Kingston, TN, for Robert and Melissa Long.

## MEMORANDUM ON UNITED STATES' MOTION FOR SUMMARY JUDGMENT

RICHARD S. STAIR, Jr., Bankruptcy Judge.

On October 19, 2001, the Plaintiffs, Kenneth and Peggy Hunley, filed the Complaint initiating this adversary proceeding in which they seek equitable relief from this court setting aside certain recorded deeds transferring the Plaintiffs' real property, which the Plaintiffs claim were fraudulently obtained by the Debtor, Ragip Sinan Mungan d/b/a Mortgage Masters, Inc. The United States of America, "by and through the Internal Revenue Service" (IRS) is named as a defendant due to federal tax liens levied against the real property on account of taxes assessed against the Plaintiffs and Defendant Mortgage Masters, Inc. (Mortgage Masters).

Before the court is a Motion for Summary Judgment (Motion) filed by the IRS on October 4, 2002, asserting that regardless of which entity actually owns the real property at issue, the Plaintiffs or Mort-

gage Masters, the IRS has liens encumbering the real property based on recorded federal tax liens. The Plaintiffs filed a "Plaintiffs' Response to United States' Motion for Summary Judgment" on October 15, 2002, stating that their tax liability has been satisfied pursuant to payment and settlement with the IRS. Neither Mortgage Masters, the Longs, nor any other defendant filed a response to the Motion. Accordingly, no defendant opposes the Motion.[1]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (K), and (O). (West 1993).

## I

The facts, as pertinent to the Motion, are set forth in the Plaintiffs' Complaint and the Motion. Prior to December 1997, the Plaintiffs owned two parcels of real property, one located at 4220 Van Dyke Drive, Knoxville, Tennessee, and the other located at 610 Jade Road, Knoxville, Tennessee (collectively, the Real Property). For reasons in dispute and still to be litigated, the Plaintiffs transferred the Van Dyke property to Defendants Michael and Robin Hunley and transferred the Jade Road property to Defendants Robert and Melissa Long sometime after August 1, 1999. The Van Dyke property was subsequently transferred to Mortgage Masters. By this adversary proceeding, the Plaintiffs are seeking to set aside these conveyances as fraudulent.

The IRS filed four federal tax liens against the Plaintiffs: (1) on August 15, 1994, in the aggregate amount of $12,920.98; (2) on September 29, 1994, in the amount of $1,617.00; (3) on February 10, 1998, in the aggregate amount of $2,285.64; and (4) on March 23, 2001, in the amount of $1,083.34 (the Federal Tax Liens).[2] The IRS claims that these tax liens are secured by the Real Property, regardless of whether it is owned by the Plaintiffs, the Longs, or Mortgage Masters. The IRS argues that if the Plaintiffs still own the Real Property, the 1994 tax liens attached to it prior to any alleged fraudulent conveyances or other encumbrances. Additionally, if the court later determines that the Real Property is owned by Mortgage Masters and/or the Longs, the IRS again claims to be a secured creditor by virtue of its tax liens.[3]

## II

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Rule 56(c) is made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

---

1. Pursuant to E.D. Tenn. LBR 7007-1, a party opposing a motion for summary judgment "shall respond within twenty days after the date of the filing of the motion.... A failure to respond shall be construed by the court to mean that the respondent does not oppose the relief requested by the motion."

2. Additionally, the IRS filed the following three Federal Tax Liens against Mortgage Masters: (1) February 23, 2001, in the aggregate amount of $65,897.03; (2) April 10,

2001, in the amount of $1,650.00; and (3) October 29, 2001, in the amount of $7,363.61. Because Mortgage Masters and Robert and Melissa Long do not oppose the Motion, summary judgment will be granted the IRS as to them. *See supra* n. 1.

3. Summary judgment is being granted on this claim, so if Mortgage Masters and the Longs are deemed to own the Real Property, the Real Property is subject to the IRS liens.

The IRS, as the moving party, bears the initial burden of proving both that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir.2001). The burden then shifts to the nonmoving party, in this case, the Plaintiffs, to produce specific facts showing that there is, in fact, a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing FED. R. CIV. P. 56(e)). In doing so, the nonmoving party must cite specific evidence and may not merely rely upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir.2000). The facts, and all resulting inferences, must be viewed in the light most favorable to the nonmovant. *Matsushita*, 106 S.Ct. at 1356. The court must then decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## III

In support of its Motion for Summary Judgment, the IRS attached copies of the Federal Tax Liens recorded against both the Plaintiffs and Mortgage Masters. The Federal Tax Liens concerning the Plaintiffs are itemized as follows:

(1) Lien filed August 15, 1994, which includes taxes in the amount of $12,920.98 for the periods ending December 31, 1989, and December 31, 1992. These taxes were assessed on May 28, 1990, and October 4, 1993, respectively.

(2) Lien filed September 29, 1994, which includes taxes in the amount of $1,617.00 for the period ending December 31, 1993, which were assessed on September 5, 1994.

(3) Lien filed February 10, 1998, which includes taxes in the amount of $2,285.64 for the periods ending December 31, 1994, December 31, 1995, and December 31, 1996. These taxes were assessed on October 2, 1995, September 9, 1996, and September 29, 1997, respectively.

(4) Lien filed March 23, 2001, which includes taxes in the amount of $1,083.34 for the period ending December 31, 1997, and assessed on November 16, 1998.

In response, the Plaintiffs rely upon the Affidavit of the Plaintiff, Kenneth Hunley, together with a payment receipt showing payment to the IRS in the amount of $359.84 on October 9, 2001, and a second copy of the payment receipt with a hand-written "Paid in full. D. Sester ID 62–11031" and marked "Received October 10, 2001 Internal Revenue Service, W & I Area 3, Territory 4, Knoxville, Tennessee." In his Affidavit, the Plaintiff states that Ms. Sester, an employee of the IRS in Knoxville, Tennessee, told him that payment of the $359.84 would clear the Plaintiffs' debt with the IRS because "the rest of the debt was in a 'non-collectable [sic] status.'" The Plaintiff also avers that Ms. Sester told the Plaintiffs that "the uncollectable [sic] debt liens would be gone or expire by the end of 2003." The Plaintiffs therefore contend that their debt to the IRS has been "fully satisfied and paid in full."

## IV

Federal Tax Liens are governed by the Internal Revenue Code (I.R.C.), located at title 26 of the United States Code. The statutes pertinent to this action are, as follows:

§ 6321. Lien for taxes.

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

I.R.C. § 6321 (West 2002).

§ 6322. Period of lien.

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

I.R.C. § 6322 (West 2002).

§ 6325. Release of lien or discharge of property.

(a) Release of lien.—Subject to such regulations as the Secretary may prescribe, the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which—

(1) Liability satisfied or unenforceable.—The Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable; ...

. . . .

(f) Effect of certificate.—

(1) Conclusiveness.—... [I]f a certificate is issued pursuant to this section by the Secretary and is filed in the same office as the notice of lien to which it relates (if such notice of lien has been filed) such certificate shall have the following effect:

(A) in the case of a certificate of release, such certificate shall be conclusive that the lien referred to in such certificate is extinguished;

(B) in the case of a certificate of discharge, such certificate shall be conclusive that the property covered by such certificate is discharged from the lien[.]

I.R.C. § 6325(a)(1) (West 2002).

§ 7122. Compromises.

(a) Authorization.—The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; ...

(b) Record.—Whenever a compromise is made by the Secretary in any case, there shall be placed on file in the office of the Secretary the opinion of the General Counsel for the Department of the Treasury or his delegate, with his reasons therefor, with a statement of—

(1) The amount of tax assessed,

(2) The amount of interest, additional amount, addition to the tax, or assessable penalty, imposed by law on the person against whom the tax is assessed, and

(3) The amount actually paid in accordance with the terms of the compromise.

Notwithstanding the foregoing provisions of this subsection, no such opinion shall be required with respect to the compromise of any civil case in which the unpaid amount of tax assessed (including any interest, additional amount, addition to the tax, or assessable penalty) is less than $50,000. However, such

compromise shall be subject to continuing quality review by the Secretary.

I.R.C. § 7122 (West 2002).

 In summary, a valid tax lien, once recorded, remains as long as the underlying tax liability is enforceable. I.R.C. § 6322; *United States v. Hodes*, 355 F.2d 746, 748 (2d Cir.1966). There are only three methods for releasing an IRS tax lien: "(1) the tax lien becomes unenforceable by operation of time, (2) the debt which is the basis of the lien is paid in full or (3) an Offer in Compromise is accepted by the IRS which would settle the debt and any tax lien associated with the debt would be no longer enforceable and have to be released." *United States v. Alfano*, 34 F.Supp.2d 827, 840 (E.D.N.Y.1999) (quoting *In re Robert Turner Optical, Inc.*, Bankr.No. 93–01004, 1994 WL 779352, at *4 (Bankr.N.D.Ala. Sept.8, 1994)). To be unenforceable under I.R.C. § 6322, "all of the [IRS's] remedies ... must be extinguished." *Id.* at 839 (quoting *Dillard v. United States (In re Dillard)*, 118 B.R. 89, 93 (Bankr.N.D.Ill.1990)).

**V**

In the present case, there is no question that the Federal Tax Liens have not become unenforceable by operation of time. As noted on the Federal Tax Liens, with the exception of the 1989 assessments, the re-file deadlines have not yet expired. As such, the Liens would still be enforceable.[4] Additionally, there is no question that the Plaintiffs have not paid in full the total amounts assessed and covered by the Federal Tax Liens.

The first issue is whether the Plaintiffs' $359.84 payment to the IRS constituted a compromise for the entire amount of tax liability owed by the Plaintiffs, such that it would release the Federal Tax Liens on the Real Property.

 "An offer to compromise a tax liability must be made in writing, must be signed by the taxpayer under penalty of perjury, and must contain all of the information prescribed or requested by the Secretary." 26 C.F.R. § 301.7122–1(d)(1). The offer must also be accepted by an IRS delegate authorized to accept such compromises. *See Foulds v. Comm'r*, 56 T.C.M. (CCH) 1112, 1989 WL 1740 (1989). "An offer to compromise has not been accepted until the IRS issues a written notification of acceptance to the taxpayer or the taxpayer's representative." 26 C.F.R. § 301.7122–1(e)(1). These regulations are strictly construed and compliance therewith is mandatory. *Delohery v. Internal Revenue Serv.*, 843 F.Supp. 666, 669 (D.Colo.1994) (citing *Boulez v. Comm'r*, 810 F.2d 209, 215 (D.C.Cir.1987)). These regulations provide the only means by which a compromise with the IRS may be effectuated. *Id.* (citing *Klein v. Comm'r*, 899 F.2d 1149, 1152 (11th Cir.1990); *Laurins v. Comm'r*, 889 F.2d 910, 912 (9th Cir.1989); *Brooks v. United States*, 833 F.2d 1136, 1145 (4th Cir.1987)).

 An informal "agreement" does not constitute a compromise under the I.R.C. and does not bind the government. *See Botany Worsted Mills v. United States*, 278 U.S. 282, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929). Therefore, "even if sub-

---

4. The Federal Tax Lien notices each provide that:

 With respect to each assessment below, unless notice of lien is refiled by the date in column (e), this notice shall constitute the certificate of release of lien as defined in IRC 6325(a).

The deadline for re-filing the Federal Tax Lien as to the 1989 assessment was June 27, 2000. It appears that the 1989 assessment was not re-filed, and if so, the tax liability therefor, in the amount of $11,079.25, was in fact released.

ordinate revenue officials at a conference informally [agree] to accept the taxpayer's payment of a lien in full satisfaction of [his] tax liability, that agreement would not bind [the IRS]." *Foulds,* 56 T.C.M. (CCH) 1112 (citing *Parks v. Comm'r,* 33 T.C. 298, 301, 1959 WL 941 (1959)).

■ The Plaintiffs have the burden of proving that their payment of $359.84 was a compromise of their entire tax liability of $17,906.96. *Id.* (citing *Welch v. Helvering,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933)). The Plaintiffs must likewise prove that D. Sester, as the government official who allegedly formed a compromise with them, had the actual authority to bind the IRS to such agreement. *See Brubaker v. United States,* 342 F.2d 655, 662 (7th Cir. 1965); *Buesing v. United States,* 42 Fed. Cl. 679, 688 (1999) (citing, among others, *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990)).

■ The documents provided by the Plaintiffs do not convince the court that the Plaintiffs and the IRS entered into a compromise whereby the Plaintiffs were released from their total $17,906.96 tax liability by the payment of $359.84. First, there was no offer to compromise in writing, as required by 26 C.F.R. 301.7122–1(d)(1), nor was there a written acceptance by the IRS of an offer of compromise, as required by 26 C.F.R. § 301.7122–1(e)(1). The receipt of payment evidencing the handwritten "Paid in full. D. Sester ID 62–11031" and marked "Received October 10, 2001 Internal Revenue Service, W & I Area 3, Territory 4, Knoxville, Tennessee" does not satisfy this requirement.

Moreover, after reviewing these documents, it is obvious to the court that the $359.84 payment made by the Plaintiffs was in satisfaction of their past due 1999 taxes, for which the IRS has not recorded or asserted a lien. The taxes covered by the Federal Tax Liens are for the years 1989, 1992, 1993, 1994, 1995, 1996, and 1997.

■ Second, the IRS did not file a certificate of release pertaining to the Federal Tax Liens with the Knox County Register of Deeds, as it is required to do in the event of a party's satisfaction. *See* I.R.C. § 6325. A certificate of release of the lien must be filed, otherwise, the tax lien is not released. *United States v. Waite, Inc.,* 480 F.Supp. 1235, 1239–40 (W.D.Pa.1979). Clearly, the IRS did not intend for the Plaintiffs' $359.84 payment to satisfy the entire $17,906.96 balance owed by the Plaintiffs and secured by the Federal Tax Liens.[5]

## VI

■ The next issue before the court is whether the Federal Tax Liens which attached to the Real Property prior to any alleged conveyances or transfers would still attach regardless of the current owner of the Real Property.

■ Federal tax liens attach to the property and property rights of the delinquent taxpayer. *Pronto Enters., Inc. v. United States,* 188 B.R. 590, 592 (W.D.Mo. 1995). This includes real and personal property owned at the time of assessment and after-acquired. *United States v. Gen. Motors Corp.,* 929 F.2d 249, 251 (6th Cir. 1991). Once a federal tax lien has attached, the delinquent taxpayer "cannot avoid or defeat liability by disclaiming or renouncing interest in the property or

---

5. As noted earlier, however, if the IRS did not re-file its Federal Tax Lien for the 1989 assessment prior to June 27, 2000, the Notice of Tax Lien recorded on August 15, 1994, will, in fact, serve as the Certificate of Release of Lien as to $11,079.25 in tax liability, thus leaving the Plaintiffs' total tax liability as $6,827.71.

transferring or conveying the interest." *United States v. Jepsen,* 131 F.Supp.2d 1076, 1085 (W.D.Ark.2000) (citing *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 2141 n. 16, 76 L.Ed.2d 236 (1983)). Likewise, once the lien has attached, any subsequent purchaser of the property takes subject to the IRS lien. *See United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien . . . ."); *United States v. Donahue,* 905 F.2d 1325, 1331 (9th Cir.1990) ("[A] lien continues to attach to a taxpayer's property regardless of any subsequent transfer of the property.").

It does not matter whether the Real Property is presently owned by the Plaintiffs, by the Longs, or by Mortgage Masters. In either event, the IRS maintains a security interest in the Real Property pursuant to its Federal Tax Liens filed prior to any sort of transfer. Accordingly, if the Plaintiffs still own the Real Property, it is encumbered by the Federal Tax Liens filed in their names. However, if Mortgage Masters is the owner of the Van Dyke property, that property is encumbered not only by the Federal Tax Liens in Mortgage Masters' name, but also by the Federal Tax Liens filed in the Plaintiffs' names prior to the first date of transfer, *i.e.,* all Federal Tax Liens filed prior to August 1, 1999. Likewise, the Jade Road property allegedly transferred to the Longs is encumbered with the Federal Tax Liens in the Plaintiffs' names prior to and at the time of the transfer.

## VII

Taking all facts and inferences in the light most favorable to the Plaintiffs, the court finds that there is no genuine issue of material fact. There was no compromise of the total tax liability evidenced by the Federal Tax Liens. Additionally, pursuant to the Internal Revenue Code, the Federal Tax Liens attaching the Real Property remain until either released or satisfied. As such, the IRS is entitled to summary judgment as a matter of law.

An order consistent with this Memorandum will be entered.

### ORDER

Pursuant to the Memorandum on United States' Motion for Summary Judgment filed this date, the court directs the following:

1. The United States' Motion for Summary Judgment filed October 4, 2002, by the Defendant United States of America, on behalf of its agency, the Internal Revenue Service, is GRANTED.

2. The Federal Tax Liens filed against the Plaintiffs by the Internal Revenue Service on August 15, 1994, September 29, 1994, February 10, 1998, and March 23, 2001, unless otherwise released by the Internal Revenue Service, continue to encumber the real property known as 4220 Van Dyke Drive, Knoxville, Tennessee, and 610 Jade Road, Knoxville, Tennessee, and the interest of the Defendant United States in these properties is superior to all subsequently filed interests in the properties.

3. The Federal Tax Liens filed against the Defendant Mortgage Masters, Inc., by the Internal Revenue Service on February 23, 2001, April 10, 2001, and October 29, 2001, continue to encumber the real property known as 4220 Van Dyke Drive, Knoxville, Tennessee, and the interest of the United States in this property is superior to all subsequently filed interests in this property.

SO ORDERED.